# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

      **v.**                                                       **Criminal Action No. 2:08CR5**
**SAMANTHA CHIDESTER,**
      **Defendant.**

## ORDER/OPINION REGARDING PLEA OF GUILTY

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Samantha Chidester, in person and by counsel, Scott Curnutte, appeared before me on July 17, 2008. The Government appeared by Stephen D. Warner, its Assistant United States Attorney.

The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count Three of the Indictment. Thereupon, the Court proceeded with the Rule 11 proceeding by first placing Defendant under oath. The Court then determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court then asked counsel for the Government to summarize the written Plea Agreement. Defendant then stated that the agreement as summarized and then amended by counsel for the Government was correct and complied with her understanding of the agreement. The Court **ORDERED** the written Plea Agreement filed.

The Court next inquired of Defendant concerning her understanding of her right to have an Article III Judge hear the entry of her guilty plea and her understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant thereafter stated in open court that she voluntarily waived her right to have an Article III Judge hear and accept her plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting her plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate

Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of her counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Samantha Chidester, only after having had her rights fully explained to her and having a full understanding of those rights through consultation with her counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned Magistrate Judge further examined Defendant relative to her knowledgeable and voluntary execution of the written plea bargain agreement dated June 16, 2008, and signed by her on June 28, 2008, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned then inquired of Defendant regarding her understanding of the written plea agreement. Defendant stated she understood the terms of the written plea agreement and also stated that it contained the whole of her agreement with the Government and no promises or representations were made to her by the Government other than those terms contained in the written plea agreement.

The undersigned Magistrate Judge further inquired of Defendant, her counsel, and the Government as to the non-binding recommendations contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count Three of the

Indictment, the undersigned Magistrate Judge would write the subject Order and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court, and only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court adjudicate the Defendant guilty of the felony offense contained in Count Three of the Indictment and make a determination as to whether to accept or reject any recommendation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that even in the event the District Court Judge refused to follow the non-binding recommendations contained in the written plea agreement and/or sentenced her to a sentence which was different from that which she expected, she would not be permitted to withdraw her guilty plea. Defendant and her counsel each acknowledged their understanding and Defendant maintained her desire to have her plea of guilty accepted.

The undersigned then reviewed with Defendant Count Three of the Indictment, the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in Count Three of the Indictment, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to her competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against her and understood the possible statutory maximum sentence which could be imposed upon her conviction or adjudication of guilty on that charge was imprisonment for a term of not more than five (5) years; understood that a fine of not more than $250,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood she would be subject to a period of at least two (2)

years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. She also understood she might be required by the Court to pay the costs of her incarceration and supervised release.

Defendant also understood that her actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that she understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced her to a higher sentence than she expected, she would not be permitted to withdraw her guilty plea.. Defendant further understood there was no parole in the federal system, although she may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

The undersigned Magistrate Judge further examined Defendant with regard to her understanding of the impact of her conditional waiver of her appellate rights as contained in the written plea agreement as follows:

Ct: Do you understand that under paragraph 14, if the Court imposes an actual sentence against you that is equal to a guideline-driven sentence of 14 or lower, you will have given up all of your rights of direct appeal, and all of your rights to collaterally attack the sentence?

Def: Yes.

Ct: And is that what you intended to do?

Def: Yes.

Ct: And do you understand what you're giving up, because if you have any question about that, now is the time to talk it over with Mr. Curnutte. Now is the time to say, "Judge I don't understand what I'm giving up."

Def: Yes. I understand.

Ct: You don't need any further explanation.

Def: No. I've read it.

Ct: And you understand what's meant by collateral attack rights and you understand fully what is meant by direct appeal rights, and you're giving up those rights if it's a 14 or lower guideline equivalent actual?

Def: Yes.

From which colloquy the Court determined that Defendant understood her appellate rights and voluntarily gave them up pursuant to the conditions in the written plea agreement.

The undersigned Magistrate Judge further cautioned and examined Defendant under oath concerning all matters mentioned in Rule 11.

The undersigned explained to Defendant and Defendant acknowledged she understood that the sentencing District Judge would be able to make findings of fact essential to sentencing on his or her own without a jury and using the preponderance of the evidence standard. In addition, the undersigned explained to Defendant and Defendant acknowledged she understood that her sentence calculation would include all of her relevant drug conduct, including but not limited to any methamphetamine relevant drug conduct and any firearms found in relation to drug activity, notwithstanding the fact she was pleading guilty to possession with intent to deliver marijuana.

The undersigned then reviewed with Defendant Count Three of the Indictment, including the elements the United States would have to prove at trial, charging her with the felony possession of marijuana with intent to distribute, in violation of Title 21, United States Code, sections 841(a)(1) and 841(b)(1),(D) and Title 18, United States Code, Section 2.

The undersigned then heard the testimony of Government witness Upshur County Sheriff's Deputy Brady, who identified Defendant and testified he had been involved in the investigation of Defendant's case. On or about February 6, 2008, Deputy Brady and another Deputy received a "tip" that there was a meth cook at co-defendant Eric Chidester's residence. The two deputies went to the residence where they smelled a very strong odor. Deputy Brady recognized the odor as from a meth cook. The deputies went up to the residence and knocked on the door. Defendant came to the door and was told to go outside, where she was advised of her rights. She made a short statement advising that Eric Chidester and Alicia Foster were in the house. The deputies told her to go in the house and see if she could get the other two to come out. She went inside the house, but then came back and said that neither was in the house. The deputies obtained a search warrant for the residence and subsequently executed a search, pursuant to which they seized equipment of the type used to manufacture methamphetamine; a quantity of marijuana; scales; some crushed pills; and other paraphernalia. They also photographed the laboratory setup. Deputy Brady reviewed a photograph and identified it as one taken at the residence, showing marijuana and crushed pills. They also found some Lowe's receipts in Defendant's purse. The deputy came back outside and talked again to Defendant, who advised that Eric Chidester was cooking the meth. She asked if she needed an attorney, and the interview was stopped at that time. She was transported and arrested. Upon followup, the receipts from Lowe's showed she and Eric Chidester obtained lithium batteries there.

The receipts from WalMart were for IsoHeat. Those items were also found in the residence. Firearms were also found in the house. Liquid samples were taken from the residence and submitted to the State Police crime lab for testing. Deputy Brady was not sure if the testing was completed. He reviewed a report from the State Police Laboratory and testified that it stated that one of the items was marijuana. The total weight of the marijuana was well above that considered personal use quantity. In addition, it was separately packaged as if for distribution and was found along with scales. Defendant was a resident of the house. She was at the house that day.

Defendant testified that she heard, understood, and agreed with all of Deputy Brady's testimony. Thereupon, Defendant, Samantha Chidester, with the consent of her counsel, Scott Curnutte, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in Count Three of the Indictment. Defendant then testified that she believed she was guilty of the charge contained in Count Three because she was charged with a conspiracy and marijuana was found in the house where she was arrested. She testified that the marijuana was hers. It was bagged as in the photograph identified as Government Exhibit One because it came that way. She was going to use it with Eric and others.

The undersigned United States Magistrate Judge concludes the offense charged in Count Three of the Indictment is supported by an independent basis in fact concerning each of the essential elements of such offense. This conclusion is supported by Deputy Brady's testimony.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood her right to have an Article III Judge hear and accept her plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting her plea; Defendant

understood the charges against her, not only as to the Indictment as a whole, but in particular as to Count Three of the Indictment; Defendant understood the consequences of her plea of guilty; Defendant made a knowing and voluntary plea of guilty to Count Three of the Indictment; and Defendant's plea is independently supported by the testimony of Deputy Brady, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's plea of guilty to the felony charge contained Count Three of the Indictment and recommends she be adjudged guilty on said charge as contained in Count Three of the Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

The undersigned further orders Defendant be continued on released pursuant to an Order Setting Conditions of Pretrial Release previously entered in this matter, as modified to require Defendant to obtain, with the assistance of Probation, at least outpatient treatment. Her meeting with her Probation Officer is to take place within 24 hours of the hearing.

The Clerk of the Court is directed to send a copy of this Order to counsel of record.

DATED: July 21, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE